UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RANDY J. AUSTIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-1169-B |
| | § | |
| KROGER TEXAS L.P., | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Defendant Kroger Texas L.P.'s Motion for Summary Judgment (Doc. 96) and Plaintiff Randy J. Austin's Motion to Reconsider Order Denying Plaintiff's Motion for Leave to File Surreply (Doc. 113). For the reasons that follow, the Court **GRANTS** the Motion for Summary Judgment and **DENIES** the Motion to Reconsider.

## I.

## BACKGROUND

This is a negligence case in which Plaintiff Randy J. Austin ("Austin") is suing his employer Kroger Texas L.P. ("Kroger") for failing to provide him with an instrumentality necessary to safely perform his job—a cleaning product called Spill Magic. *See* Doc. 89, Am. Compl. ¶ 10. At the time of his accident, Austin worked as a utility clerk[1] at one of Kroger's locations in Mesquite, Texas. *Id.* ¶ 5; Doc. 98-1, Ex. E, Austin Dep. 24:9–11. As a utility clerk, he had a wide range of duties, including picking up trash, sweeping the store, bagging groceries, retrieving carts, and mopping the

---

[1] Austin also identifies his job title as "Floor Clean-Up Person." Doc. 89, Am. Compl. ¶ 5. The Court finds that there is no distinction between the two terms, and so will refer to Austin as a "utility clerk."

store and restrooms. Doc. 98-1, Ex. E, Austin Dep. 24:13–18. It was while performing this last task that Austin sustained the injuries that gave rise to this suit. *Id.* at 48:7–16; Doc. 89, Am. Compl. ¶ 7.

On July 27, 2009, Austin was inspecting the men's bathroom when he discovered a "brownie oily looking substance" covering approximately eighty percent of the floor. Doc. 98-1, Ex. E, Austin Dep. 54:18, 57:21. Using the supplies on his utility cart,[2] which Kroger provided, Austin began to clean the spill. *Id.* at 37:24, 38:10–11, 66:17. Normally, his cart included a product called Spill Magic, which is used to absorb liquid spills. *Id.* at 38:4, 14–16. On the day of the incident, however, Kroger was out of Spill Magic, so Austin attempted to use dry mop heads to absorb the liquid. *Id.* at 48:20–49:14, 55:17, 56:14–21. He had successfully cleaned a similar spill in the women's restroom using this technique, and managed to clean thirty to forty percent of the men's room before he slipped. *Id.* at 62:10–14, 90:19–92:10. The fall resulted in a broken femur and dislocated hip, which required surgery to repair. *Id.* at 104:13–18; Doc. 89, Am. Compl. ¶ 7.

Austin originally filed suit in the County Court at Law No. 2 in Dallas County, Texas, seeking damages on negligence, premises liability, and gross negligence theories of liability. Doc. 2, Notice of Removal, Ex. A, Original Pet. 1–4. In June 2011, Kroger removed the case to this Court, where it later obtained summary judgment on all of Austin's claims. Doc. 2, Notice of Removal; Doc. 67, Mem. Op. & Order. Austin then appealed to the Fifth Circuit, which initially affirmed summary judgment on the gross negligence claim and reversed on the premises liability and ordinary negligence claims. *Austin v. Kroger Tex. L.P.*, 731 F.3d 418 (5th Cir. 2013). After Kroger petitioned

---

[2] These included "[a] dust mop, broom, safety cones, mop and mop bucket and paper towels and gloves." Doc. 98-1, Ex. E, Austin Dep. 38:1–2.

for rehearing *en banc*, the Fifth Circuit denied the petition but withdrew its original opinion and certified a question regarding an ambiguity in Texas' premises liability law to the Texas Supreme Court. *Austin v. Kroger Tex. L.P.*, 746 F.3d 191 (5th Cir. 2014). That court heard the case and answered the question in a way that supported this Court's initial ruling on Austin's premises liability claim. *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193 (Tex. 2015). Accordingly, the Fifth Circuit affirmed summary judgment on Austin's gross negligence and premises liability claims, but reversed on the ordinary negligence claim and remanded it to this Court to consider "whether Austin could pursue a claim based on Kroger's alleged failure to provide a necessary instrumentality of his employment."[3] *Austin v. Kroger Tex. L.P.*, 614 F. App'x 784 (5th Cir. 2015).

Kroger has now moved for summary judgment on Austin's remaining negligence claim. Doc. 96, Def.'s Mot. for Summ. J. Austin responded, and Kroger filed a reply. Doc. 100, Br. in Supp. of Pl.'s Resp. [hereinafter "Pl.'s Resp. Br."]; Doc. 103, Def.'s Reply Br. Austin then moved for leave to file a surreply, arguing that Kroger had raised a new argument in its Reply. Doc. 104, Mot. for Leave to File Surreply. The Court denied that motion, finding that a surreply was unwarranted. Doc. 110, Mem. Op. & Order. Austin now moves the Court to reconsider that decision. Doc. 113, Mot. to Reconsider. As the Court has received Kroger's Response and Austin's Reply to the Motion to Reconsider, both motions are ready for review. Doc. 114, Def.'s Resp.; Doc. 115, Pl.'s Reply Br.

---

[3] The Court originally treated Austin's ordinary negligence claim as one based on a negligent activity, rather than a negligent failure to provide a necessary instrumentality. *See* Doc. 67, Mem. Op. & Order 5.

## II.

## LEGAL STANDARD

A.    *Reconsideration*

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004). Consequently, courts generally treat such a motion as one to alter or amend a judgment under Rule 59(e), or for relief from a final judgment, order, or proceeding under Rule 60(b). *Id.* "Rule 59(e) governs when the reconsideration motion is filed within [twenty-eight] days of the challenged order." *Blueskygreenland Envtl. Solutions, LLC v. Rentar Envtl. Solutions, Inc.*, No. 4:11-CV-1745, 2012 WL 423399, at *2 (S.D. Tex. Feb. 8, 2012). Because Austin filed his Motion to Reconsider within twenty-eight days of the Court's Order denying him leave to file a surreply, Rule 59(e) controls.

A Rule 59(e) motion to alter or amend a judgment challenges the "correctness of a judgment." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). "Reconsideration of a judgment after its entry is an extraordinary remedy," however, and is only available "to correct manifest errors of law or fact or to present newly discovered evidence." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). As a result, a court will not grant a Rule 59(e) motion that merely "rehash[es] evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* at 478–79. Likewise, a party may not "relitigate issues that were resolved to the [party's] dissatisfaction." *McKinney v. Thaler*, No. 3:12-CV-1105, 2013 WL 3243567, at *1 (N.D. Tex. June 27, 2013) (citing *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 (5th Cir. 1989)). Ultimately, a court considering a motion to alter or amend a judgment must "strike the proper

balance between the need for finality and the need to render just decisions on the basis of all the facts," keeping in mind that "Rule 59(e) favor[s] the denial of motions to alter or amend a judgment." *Id.* (internal quotation marks omitted) (quoting *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995); *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993)).

B.      *Summary Judgment*

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). But if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id.* at 322–23.

Once the summary judgment movant has met this burden, it falls to the non-movant to "go beyond the pleadings and designate specific facts" showing that a genuine issue exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (internal citations omitted).

Instead, the non-moving party must "come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). But the court need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). If the non-movant is unable to make the required showing, the court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

There are two motions before the Court—Austin's Motion to Reconsider and Kroger's Motion for Summary Judgment. Because Austin's Motion concerns his ability to file a surreply to Kroger's Motion, the Court will address it first.

A.    *Motion to Reconsider*

Austin's Motion to Reconsider stems from his motion for leave to file a surreply (the "Surreply Motion") to Kroger's Motion for Summary Judgment. In the Surreply Motion, Austin argued that Kroger had raised an entirely new argument for summary judgment in its Reply—namely, that Austin did not have sufficient evidence to prove causation. Doc. 104, Surreply Mot. 3–5. Instead, he claimed, Kroger had argued only that its evidence regarding Spill Magic's effectiveness disproved causation; Austin had therefore limited his response to (1) contesting the admissibility of that evidence, and (2) arguing that Kroger had not successfully shifted the burden to him to produce

evidence in support of his case. *See id.*; Doc. 100, Pl.'s Resp. Br. 19–20. Needless to say, Austin did

not attach any evidence to his summary judgment Response.

Upon reviewing Kroger's Motion for Summary Judgment, the Court disagreed with Austin

and found that Kroger had properly raised its evidentiary insufficiency argument. Doc. 110, Mem.

Op. & Order 3–5. Thus, the Court denied him leave to file a surreply. Austin now requests that the

Court reconsider that decision, arguing that equity favors granting him an opportunity to respond

to Kroger's argument. Doc. 113, Mot. to Reconsider ¶¶ 5–12. Specifically, Austin attributes his

failure to include evidence with his Response to a good-faith interpretation of the "confusi[ng]" law

regarding when a summary judgment movant has met its burden. *Id.* ¶¶ 6, 9. He has also attached

a declaration and expert report from his causation expert to show that the surreply would address

matters beyond those presented in his response. Doc. 113-2, Decl. of Charles Koch.

Austin has not presented any grounds meriting reconsideration. Instead, he merely rehashes

the same argument he presented in his Surreply Motion—that he relied in good faith on certain case

law suggesting that Kroger had not carried its burden—and puts forward evidence that existed at the

time he filed that Motion.[4] *Compare* Doc. 113-2, Ex. A, Certified Indus. Hygienist's Report (expert

report dated February 9, 2016), *with* Doc. 104, Surreply Mot. (filed on March 30, 2016).[5] Rule 59(e)

---

[4] Notably, it also existed at the time Austin filed his response to Kroger's summary judgment Motion.

[5] The Declaration of Charles Koch, which Austin attached to his Motion to Reconsider, was executed on April 8, 2016. Doc. 113-2, Decl. of Charles Koch 3. While new evidence is grounds for reconsidering an order, the Declaration is not "new" evidence for that purpose. The expert report appended to the Declaration clearly demonstrates that Koch was available to Austin before he filed his Surreply Motion, and Austin has not suggested that he could not have obtained this Declaration before that time. In fact, it appears that it took only three days (at most) for Austin to acquire the Declaration. For reasons known only to him, Austin waited until after the Court ruled on his Surreply Motion to obtain evidence that he now says justifies granting it. This is not proper motion practice, and the Court will not indulge it.

demands more than this. *See Templet*, 367 F.3d at 478–79. Accordingly, the Court will not reconsider its Order denying Austin leave to file a surreply.[6]

B.    *Motion for Summary Judgment*

In its Motion, Kroger argues that it is entitled to summary judgment on Austin's ordinary negligence claim for three reasons: (1) it owed Austin no duty to provide Spill Magic; (2) it was not negligent as a matter of law because Austin's injury occurred while he was performing his customary duties; and (3) Austin has insufficient evidence to prove that any negligence on Kroger's part caused his injury. Doc. 97, Def.'s Br. in Supp. of Its Mot. for Summ. J. 8–16 [hereinafter "MSJ Br."]. The Court will address each argument in turn.

1.    <u>Kroger's Duty to Provide Spill Magic</u>

There are two aspects to Kroger's no-duty argument. First, Kroger borrows from a premises liability doctrine to argue that it did not owe Austin a duty to provide him with a necessary instrumentality to confront an open and obvious hazard. *Id.* at 9–12. Second, Kroger contends that it fulfilled any duty it might have owed by providing Austin with one safe way to perform his job (*viz.* the dry mop heads). *Id.* at 12–13. As explained more fully below, although Kroger owed Austin a duty to provide the necessary instrumentalities to clean the spill safely, Austin has failed to demonstrate that Spill Magic was in fact necessary to perform his job. Therefore, summary judgment is appropriate.

---

[6] As an aside, it appears that Austin, despite the "confusion" surrounding summary judgment burden-shifting (to which he has referred repeatedly), elected to put all his eggs in one basket and argue only that Kroger had not shifted the burden to him to produce evidence. That was a strategic decision, and it is not this Court's job to relieve him of its consequences.

      *i.*      *The duty to provide necessary instrumentalities when encountering an obvious or known hazard*

Under Texas premises liability law, an employer owes its employees no duty to warn of or make safe a hazardous condition that is obvious or otherwise known to the employees. *Austin*, 465 S.W.3d at 202–03. This rule has already disposed of Austin's premises liability claim in this case, but Kroger argues that it also bars his necessary instrumentality claim. In support, Kroger cites two cases where the Texas Supreme Court supposedly applied "the same 'no-duty' analysis to instrumentalities and other ordinary-negligence claims." Doc. 97, MSJ Br. 10. Austin, on the other hand, believes that Kroger is misreading these cases and that neither supports the proposition that an open and obvious hazard vitiates the employer's "'absolute,' 'continuous,' and 'non-delegable'" duty to provide necessary instrumentalities. Doc. 100, Pl.'s Resp. Br. 4 (quoting *Fort Worth Elevators Co. v. Russell*, 70 S.W.2d 397, 401–02 (Tex. 1934), *overruled on other grounds by Wright v. Gifford-Hill & Co., Inc.*, 725 S.W.2d 712, 714 (Tex. 1987); *Kroger Co. v. Milanes*, 474 S.W.3d 321, 335 (Tex. App.—Houston [14th Dist.] 2015, no pet.)).

      a.      The Texas Supreme Court Has Not Decided Whether an Employer Owes a Duty to Provide Necessary Instrumentalities For Encountering an Open and Obvious Hazard

Kroger's first case, *Kroger Co. v. Elwood*, 197 S.W.3d 793 (Tex. 2006), involved a Kroger courtesy clerk who was injured when a customer closed her car door on his hand while he was loading her groceries. *Id.* at 794. The employee sued Kroger for both failing to properly train him and failing to provide necessary instrumentalities. *Id.* The Texas Supreme Court reversed a jury verdict in the employee's favor, finding that Kroger owed him no duty on either claim. In doing so, that court stated that an employer "owes no duty to warn of hazards that are commonly known or already

appreciated by the employee." *Id.* But this rule applied only to the employee's claim that Kroger should have explained how to avoid an injury like the one he suffered, as the court found that the employee was aware of the risk of placing his hand in a doorjamb. *Id.* at 795. The employee's instrumentalities claim, on the other hand, failed because there was no evidence that the proposed instrumentalities were necessary to perform his job. *Id.* Thus, the fact that the hazard was open and obvious was unrelated to the decision that Kroger owed no duty on the instrumentalities claim.

The second case Kroger cites does not support its position, either. In *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401 (Tex. 2009), the Texas Supreme Court declared that an employer owes no duty to *third parties* to train its employees on the risks of fatigue or prevent injuries caused by the fatigue of its off-duty employees. *Id.* at 404. Although the court applied its no-duty rule regarding open and obvious hazards, it did so in the context of the third parties' failure to train claim, which it treated as essentially a failure to warn. *Id.* at 413 (finding that employer owed no duty to third parties to warn its employee of a risk that was both widely known and which the employee appreciated). At no point did the court discuss any duty that the employer might have owed to its employees, nor did it apply the open and obvious no-duty rule to an instrumentalities claim. In short, *Escoto* simply does not bear on whether Kroger owed Austin a duty in this case.

At best, these cases stand for the unremarkable premise that, in every negligence case, the plaintiff must prove that the defendant owed him a duty. *See Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983). They also establish a rule that an employer has no duty to warn its employees of an open and obvious hazard. But the duty to warn is different from the duty to provide necessary instrumentalities, *see Austin*, 465 S.W.3d at 215–16, and neither case holds that an open and obvious hazard vitiates the latter duty. In fact, the Texas Supreme Court has explicitly left this

question—"which, if any, of the limitations on an employer's premises-liability duty may also apply to its instrumentalities duty"—open. *Id.* at 216 n.23. Accordingly, it falls to this Court to hazard an "*Erie* guess" as to how Texas' highest court would resolve the question. *See Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000).

### b.    The Court's *Erie* Guess

In making its *Erie* guess, the Court "may look to the decisions of intermediate appellate state courts for guidance." *Id.* Here, Austin points to two such decisions that he believes are relevant: *Kroger Co. v. Milanes* and *Katy Springs & Manufacturing, Inc. v. Favalora*, 476 S.W.3d 579 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). In *Milanes*, a journeyman meat cutter inadvertently amputated parts of several fingers while using his employer's bone-in band saw to cut a slab of meat. 474 S.W.3d at 329. Testimony at trial established that the saw's housing showed signs that the blade had been making contact with it, which can dull the blade. *Id.* at 331. There was also evidence that the blade may have been further dulled by excessive contact with blade scrapers. *Id.* at 331–32. On top of that, the blade guard was not functioning properly. *Id.* at 331. These defects were all said to have been causes of the employee's injury. *Id.* at 331–32. Importantly, before his injury, he had reported to his employer both that the saw was making a high-pitched noise, which indicates excessive contact, and that the blades were dulling quickly, among other problems. *Id.* at 327, 331. This evidence shows that he was aware of the hazard. Despite this awareness, the Texas Court of Appeals affirmed a jury verdict in his favor on an ordinary negligence theory, overruling his employer's argument that his claims sounded only in premises liability. *Id.* at 335–37. That is, the court found the evidence sufficient to support a negligence theory of recovery—including on an instrumentalities claim—despite the employee's admitted knowledge of the danger.

Similarly, in *Favalora*, the Texas Court of Appeals found that an employer had breached its duty to provide its employee with necessary instrumentalities when a bundle of wire that had jammed in a payoff reel on a manufacturing line escaped and hit the employee in the chest, injuring his chest and neck. 476 S.W.3d at 587–89. As in *Milanes*, the employee was aware of the danger that this jammed wire posed. *See id.* at 589 (recounting testimony from employee and others that wire had previously jammed and then escaped). And again, in spite of the employee's knowledge, the court found that the employer owed (and breached) a duty to furnish the employee with necessary instrumentalities. *Id.* at 588–89. These cases are therefore inconsistent with Kroger's argument that an employer owes no duty to provide an employee with necessary instrumentalities when encountering a known hazard.

The reasons underlying the no-duty rule in premises liability further bolster the conclusion that it does not carry over into the instrumentalities context. In its opinion in this case, the Texas Supreme Court explained that landowners (and employers) generally owe their invitees (and employees) a duty because they are in a better position to discover hazards on the property, and thus to take steps to either warn of such hazards or make them safe. *Austin*, 465 S.W.3d at 203. When the hazard is obvious or otherwise known, however, the landowner/employer no longer occupies this superior position; rather, "the law presumes that invitees will take reasonable measures to protect themselves against known risks." *Id.* The basis for this presumption is that the invitee/employee will appreciate the danger that the hazardous condition poses. *See* Restatement (Second) of Torts § 343A cmt. b (1965).[7] Conversely, then, if the invitee/employee would not reasonably recognize the danger

_____

[7] The Texas Supreme Court has previously disapproved of this section of the Restatement. *See Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 773–74 (Tex. 2010). It appears, though, that the court walked

of the hazard, the no-duty presumption would not apply.

The flaw in Kroger's position, when applied to an instrumentalities claim, is that it treats the hazardous condition as the sole component of the risk that the employee faces. But the hazardous condition is really only part of the equation—the adequacy of the instrumentalities the employer provides must also be taken into account. Using the instant case as an example, a large, oily spill on the ground is undeniably a hazardous condition. But when an employer provides an employee like Austin with instrumentalities to encounter the condition, the instrumentalities adjust the apparent risk. That is, if an employee encounters a known or obvious hazard in the reasonable belief that the instrumentalities with which he has been provided are adequate to mitigate the danger that the hazardous condition poses, then the apparent risk diminishes greatly. If, however, the instrumentalities are inadequate for the task, and the employee is not aware of that fact, then the true risk is not "known" in the sense that the employee does not appreciate the extent of the danger that encountering the hazardous condition actually poses. In short, it is not the employee's knowledge of the hazardous condition that matters, but rather the employee's knowledge of the risk of encountering the condition using the instrumentalities with which he has been provided.[8] The mere fact that Austin was encountering an obvious hazardous condition, then, is not enough to vitiate Kroger's duty to provide him with the necessary instrumentalities.

This outcome is also consistent with Texas' public policy to encourage landowners to

---

back that criticism in *Austin*, noting that *Del Lago* represents an exception to the general rule, and the concepts underlying § 343A are still relevant. 465 S.W.3d at 209–10, 213.

[8] *Milanes* and *Favalora* can be read as going even further, in that the Court of Appeals appeared to impose a duty even when the employees were aware of the inadequacy of the instrumentalities.

eliminate hazards on their property. *See Austin*, 465 S.W.3d at 214. In this case, the Texas Supreme Court declined to create an exception to the general no-duty rule in premises liability for instances when an employee encounters a hazardous condition at his employer's behest. *Id.* at 213–14. One of its stated reasons for doing so was that such an exception "would discourage employers from retaining employees to perform the kinds of repair and janitorial work necessary to maintain their premises in a reasonably safe condition," since the employer would risk incurring liability every time such an employee performed his job. *Id.* at 214. Imposing a duty here, however, does not run that risk. Instead, an employer will only risk liability when it fails to provide its employee with the instrumentalities necessary to safely encounter the hazard. Employers therefore have an incentive to both hire employees to eliminate potential hazards and provide those employees with the proper tools for the job.

In sum, the Court concludes that the Texas Supreme Court, if faced with the question presented here, would decide that employers have a duty to provide their employees with necessary instrumentalities even when they encounter known or obvious hazardous conditions.

### ii.    *Kroger had no duty to provide an unnecessary instrumentality*

Next, Kroger argues that it provided Austin with one safe way to perform his job, and therefore it was under no duty to provide a second (i.e., Spill Magic). Doc. 97, MSJ Br. 12–13. Kroger points out that Austin successfully cleaned a similar spill in the women's restroom before falling in the men's room, thereby demonstrating that the dry mop head method was safe. *Id.* Conversely, Austin asserts that Kroger's argument "has no basis in Texas law." Doc. 100, Pl.'s Resp. Br. 11. Instead, Austin argues, Kroger is relying on inapposite authority and "its own[] unattributed, unsupported *ipse dixit* regarding the effectiveness of [mops]." *Id.* at 11–17.

Kroger cites several cases to support its position. In *Port Terminal Railroad Ass'n v. Ross*, 289 S.W.2d 220 (Tex. 1956), the Texas Supreme Court stated that the defendant railroad, having "furnished one reasonably safe way to do the job[,] . . . was under no duty to furnish a second method of performing the work." *Id.* at 225. But *Ross* interpreted the Federal Employers' Liability Act, which completely preempts state law.[9] *See id.* at 222; *Kan. City S. Ry. Co. v. Oney*, 380 S.W.3d 795, 799–800 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Thus, *Ross* does not speak to whether, under Texas law, Kroger fulfilled its duty by providing one safe way for Austin to clean up the spill.

The other cases Kroger cites are from the Texas Courts of Appeal, and they provide some support for the "one safe way" rule. *See Town & Country Mobile Homes, Inc. v. Bilyeu*, 694 S.W.2d 651, 655 (Tex. App.—Fort Worth 1985, no writ) ("Appellant argues that once an employer has furnished a safe way for an employee to do a job, the employer has no duty to provide a second safe way. We agree with that proposition."); *Gulf, Colo. & Santa Fe Ry. Co. v. Warner*, 36 S.W. 118, 119 (Tex. Civ. App. 1896) ("Masters are not bound to supply the best and safest or newest appliances for the purpose of securing the safety of their employ[ee]s . . . ."). The Texas Supreme Court has not recognized the "one safe way" rule as such, but it has made clear that an employer owes no duty to provide instrumentalities that are unnecessary to perform the job safely. *See Elwood*, 197 S.W.3d at 795. The case *Elwood* cites for this proposition, *Allsup's Convenience Stores, Inc. v. Warren*, 934 S.W.2d 433 (Tex. App.—Amarillo 1996, writ denied), considered several factors relevant to determining whether the instrumentality was necessary: (1) the employee had never requested the

---

[9] Furthermore, the Texas Supreme Court based the "one safe way" rule in *Ross* on a Texas Court of Civil Appeals opinion that the United States Supreme Court later reversed. 289 S.W.2d at 225 (citing *Gulf, Colo. & Santa Fe Ry. Co. v. Deen*, 275 S.W.2d 529 (Tex. Civ. App.—Eastland 1955, writ ref'd n.r.e.), *rev'd*, 353 U.S. 925 (1957)).

instrumentality in question; (2) the employee did not complain that the task she was performing was unsafe; (3) the employee had safely performed the task in the past without injury; (4) there was no evidence that the instrumentality "was commonly used in, or had been established by industry standards or customs as a safety measure for" her job; (5) there was no evidence that "a reasonably prudent employer would have provided such instrumentality"; and (6) there was no medical evidence that the instrumentality would have prevented the employee's injury. *Id.* at 438.

This case presents a similar situation. The evidence is unclear as to whether Austin requested Spill Magic on the day in question, *see* Doc. 98-1, Ex. E, Austin Dep. 49:2–14, but he has pointed to nothing that shows he complained that the task was unsafe. In fact, he testified that he did not talk to any other Kroger employees about his duties that day. *Id.* at 100:7–10. Austin's testimony also reveals that he safely performed his job using the dry mop heads. *Id.* at 90:19–92:10. As to the fourth and fifth factors, Austin has presented no evidence that Spill Magic is commonly used in the industry or that a reasonably prudent employer would provide it. Finally, Austin has not timely offered evidence that Spill Magic would have prevented his injury.[10] Austin's own speculative testimony about Spill Magic's efficacy as a cleaning agent is not enough. *See Leitch v. Hornsby*, 935 S.W.2d 114, 119 (Tex. 1996). There is therefore insufficient evidence from which a reasonable jury could

---

[10] As mentioned previously, Austin submitted an expert report on the issue of causation for the first time as an attachment to his Motion to Reconsider. Although this report was generated on February 9, 2016, Austin did not attach it to either his Response to Kroger's Motion for Summary Judgment (filed on March 8, 2016) or his Motion for Leave to File Surreply (filed on March 30, 2016). He has offered no excuse for not doing so, nor did he request that the Court defer adjudication of the summary judgment motion or grant him more time to obtain evidence. *See* Fed. R. Civ. P. 56(d). The Court therefore exercises its discretion and declines to consider the untimely evidence. *See Martin v. Lennox Int'l, Inc.*, 342 F. App'x 15, 18–19 (5th Cir. 2009) (per curiam) (unpublished); *Bernhardt v. Richardson-Merrell, Inc.*, 892 F.2d 440, 444 (5th Cir. 1990).

conclude that Spill Magic was a necessary instrumentality. Accordingly, Kroger had no duty under these circumstances to provide it to Austin.

    2.    <u>Employer's Liability for Employee's Injuries During the Performance of Customary Work</u>

Even if it owed Austin a duty in this case, Kroger argues, it cannot be held liable because his injury "result[ed] from performing the same character of work that employees in that position have always done," and there is no evidence that Austin's job was "unusually precarious." *Elwood*, 197 S.W.3d at 795; *see also* Doc. 97, MSJ Br. 14–15. The Texas Supreme Court has concurred with Kroger—at least in the context of Austin's premises liability claim—that Austin was injured while "performing his routine job." Doc. 97, MSJ Br. 14; *see also Austin*, 465 S.W.3d at 214 ("It is undisputed that mopping up spills is the same character of work that Austin—as the store's self-described 'floor clean-up person'—and other employees in his position have always done."). Austin rejects the characterization of this language as a general rule, arguing instead that it is a fact-specific foreseeability inquiry that cannot be decided on summary judgment. Doc. 100, Pl.'s Resp. Br. 17–19. As discussed more fully below, the Court agrees with Kroger.

The first case to articulate this limitation on employers' liability was *Great Atlantic & Pacific Tea Co. v. Evans*, 175 S.W.2d 249 (Tex. 1943), where a stock boy sued his employer for a hernia he sustained while carrying 100-pound sacks of potatoes into the store from the front sidewalk. *Id.* at 250. The employee's theories of liability were that the employer failed to provide an adequate work force or the proper equipment to carry out the task. *Id.* Though the jury found for the employee, the Texas Supreme Court reversed based on two seemingly distinct rationales. The first was a general statement that the employee could not recover if his employer "merely required him to do the usual

and customary work required of persons in his line of employment." *Id.* at 251. The second basis for reversal was that the facts in the record failed to establish foreseeability as a matter of law. *Id.*

Austin argues that the foreseeability issue in *Evans* was fact-specific, and at least one subsequent opinion is arguably consistent with that interpretation. *See W. Union Tel. Co. v. Coker*, 204 S.W.2d 977, 979 (Tex. 1947). More recent opinions, however, apply the "customary work" rationale as a general rule. *See, e.g., Elwood*, 197 S.W.3d at 795 ("[W]hen an employee's injury results from performing the same character of work that employees in that position have always done, an employer is not liable if there is no evidence that the work is unusually precarious."); *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995) (characterizing *Evans* as having "held that when the employee was doing the same character of work that he had always done and that other employees in other stores were required to do, there was no negligence"). Furthermore, these cases appear to adhere to the original distinction between foreseeability and the "customary work" rule, treating the latter as bearing on the employer's duty. In *Elwood*, for example, the court cited the rule in a paragraph discussing the duties of the employer, and ultimately disposed of the case on the basis that the employer owed no duty. 197 S.W.3d at 795. Even in this case, the fact that Austin was performing his customary work was relevant to the Texas Supreme Court's decision that Kroger owed him no duty to warn of the spill or make it safe. *Austin*, 465 S.W.3d at 214. Thus, the fact that Austin's injury occurred while he was performing his customary work offers yet another basis for finding that Kroger did not owe him a duty here.

To the extent that the "customary work" rule relates to foreseeability, Austin argues that foreseeability is inherently a jury question. Doc. 100, Pl.'s Resp. Br. 19 (citing *Hunsucker v. Omega Indus.*, 659 S.W.2d 692, 698 (Tex. App.—Dallas 1983, no pet.)). Although foreseeability may often

involve disputes of material fact, which are inappropriate for resolution on summary judgment, Austin has cited, and this Court has found, no authority categorically prohibiting summary judgment with regard to foreseeability. In fact, the Texas Supreme Court has "rejected the notion that the 'due care/foreseeability issue [is] totally within the jury's discretion.'" *Snellenberger v. Rodriguez*, 760 S.W.2d 237, 238 (Tex. 1988) (quoting *Freeman v. City of Pasadena*, 744 S.W.2d 923, 924 (Tex. 1988)).[11] The cases cited previously have found an employee's injuries sustained during the performance of his customary work to be unforeseeable as a matter of law. That is what happened here, so summary judgment is proper.

3.     Evidence of Causation

Last, Kroger argues that Austin "has no evidence that, more likely than not, Spill Magic would have prevented his fall." Doc. 97, MSJ Br. 15–16; *see also* Doc. 103, Def.'s Reply Br. It also points to promotional materials regarding Spill Magic from its own handbook, which it contends disprove causation as a matter of law. Doc. 97, MSJ Br. 16. Austin objects that the material from the handbook is inadmissible and therefore cannot be considered on summary judgment. Doc. 99, Pl.'s Objs. to Def.'s Summ. J. Evid.; Doc. 100, Pl.'s Resp. Br. 20. He further asserts that Kroger has failed to carry its summary judgment burden, meaning that he need not respond with evidence supporting his case. Doc. 100, Pl.'s Resp. Br. 20.

As an initial matter, the Court agrees that the evidence to which Austin objects is inadmissible as hearsay not within any exception. Accordingly, the Court will not consider it in deciding this Motion. *See Harris ex rel. Harris v. Pontotoc Cty. Sch. Dist.*, 635 F.3d 685, 692 (5th Cir.

---

[11] In *Snellenberger*, the Texas Supreme Court affirmed the trial court's grant of summary judgment on grounds that the decedent's injury was unforeseeable as a matter of law. 760 S.W.2d at 237–38.

2011).

This leaves only Kroger's evidentiary insufficiency argument. Kroger avers that Austin cannot show that its failure to provide Spill Magic was the cause in fact of his injuries; in other words, "Austin has no evidence to show that Kroger's failure to provide him Spill Magic was a substantial factor in his injur[ies]." Doc. 97, MSJ Br. 16; Doc. 103, Def.'s Reply Br. 6–10. Austin responds that these statements are insufficient to meet Kroger's summary judgment burden, and therefore he is not obligated to produce evidence demonstrating a genuine dispute of material fact. Doc. 100, Pl.'s Resp. Br. 19–20.

Rule 56 requires a party asserting the absence of a genuine dispute of material fact to support its position in one of two ways: either the party must "cit[e] to particular parts of materials in the record," or it must "show[] that the materials cited do not establish the absence or presence of a genuine dispute, *or* that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B) (emphasis added). The second option is disjunctive, allowing the moving party to support its position either by reference to cited material from the record or by "showing" that the other party does not have admissible evidence supporting the fact at issue. Whether Kroger has carried its burden depends on what is required to make this "showing."

The phrasing of the rule suggests that this latter showing does not require resort to materials in the record. Subsection A requires "citing to particular parts of materials in the record," and the first half of subsection B refers to "the materials cited." The second half of subsection B, on the other hand, makes no reference to cited materials. The drafters of the rule clearly knew how to oblige a movant to cite from the record, so the inference to be drawn from the absence of similar language in the second half of subsection B is that it does not require such citations. *Cf. United States v. Baker*,

- 20 -

742 F.3d 618, 622 (5th Cir. 2014).

This interpretation is consistent with both the rule's commentary and precedent. In the commentary to the 2010 amendment to Rule 56, the advisory committee noted that "Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials." Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment. Even before this amendment, the Supreme Court explained that a summary judgment movant may make the required "showing" simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The Fifth Circuit has also interpreted this requirement liberally, holding that an allegation of evidentiary insufficiency on a necessary element is enough to shift the burden to the non-movant. *See Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999).

Here, Kroger unquestionably carried its burden. One of the elements of negligence that Austin must prove is proximate cause. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). Kroger alleged that Austin did not have any causation evidence in its Motion, and it further fleshed out that argument in its Reply, where it attacked specific evidence upon which Austin relies. Thus, it appears that Kroger has satisfied both halves of Rule 56(c)(1)(B). At the very least, it "allege[d] that there is an absence of evidence necessary to prove a specific element" of Austin's claim, which shifted the burden to Austin to "present[] evidence that provides a genuine issue for trial." *Thomas*, 174 F.3d at 644.

Austin has not made the required showing. He did not attach any evidence to his response, and the only evidence of causation to which he referred was his own testimony regarding the efficacy of Spill Magic as a cleaning agent:

> Q:  Do you believe that [Spill Magic] would have been the most effective way to get [the spill] off the floor?
>      . . . .
> A:  Not specifically, but I don't know for sure because—but it probably would have helped out a whole lot.

Doc. 98-1, Ex. E, Austin Dep. 145:19–24. The proximate cause element of a negligence claim "comprises two elements: cause in fact and foreseeability." *Excel Corp. v. Apodaca*, 81 S.W.3d 817, 820 (Tex. 2002). "The test for cause in fact, or 'but for cause,' is whether the act or omission was a substantial factor in causing the injury 'without which the harm would not have occurred.'" *Id.* (quoting *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)). "In a case like this one, where there is no medical testimony linking the alleged negligence to the injury, a claimant must provide probative evidence, through expert testimony, connecting the injury to the alleged negligence." *Leitch*, 935 S.W.2d at 119. Lay opinion testimony is not enough to make this connection. *Id.*

*Leitch* itself is illustrative. In that case, the plaintiff, a technical manager for a cable TV servicing company, sued his employer after he suffered an injury while lifting a 65-pound cable reel. *Id.* at 116. He alleged that the employer's failure to provide him with the necessary equipment to safely lift the reel caused his injury. *Id.* at 118. To show that this failure was the cause in fact of his injury, the plaintiff offered testimony from a co-worker, who "did not witness the incident in question" and was not offered as an expert. *Id.* at 119. Despite the co-worker's testimony that "the use of a lift belt would have eliminated [the plaintiff's] injury," the Texas Supreme Court ruled that such evidence could not sustain a finding of cause in fact as a matter of law. *Id.*

Like the plaintiff in *Leitch*, Austin has provided only lay opinion testimony.[12] But such evidence is incompetent to sustain a finding of cause in fact. *Id.* at 119–20. Austin has pointed to no other evidence supporting such a finding, so he cannot prove that Kroger's failure proximately caused his injury. He has thus failed to carry his burden to prove the existence of a genuine dispute of material fact regarding a necessary element of his claim. Accordingly, Kroger is entitled to summary judgment on this basis as well.

In sum, Kroger is entitled to summary judgment on Austin's necessary instrumentality claim for three reasons: first, Kroger owed him no duty to provide an instrumentality that he cannot prove was necessary to the safe performance of his job; second, Kroger cannot be liable for Austin's injuries because they occurred during the performance of his customary work; and third, Austin lacks sufficient evidence to prove that Kroger's failure to provide Spill Magic proximately caused his injuries. Austin's claim fails as a matter of law.

## IV.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Austin's Motion to Reconsider (Doc. 113) and **GRANTS** Kroger's Motion for Summary Judgment (Doc. 96).

SO ORDERED.

SIGNED: April 25, 2016.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[12] Again, the Court will not consider Austin's belatedly-submitted expert report.